Warden, J.
In the exercise of a jurisdiction, since taken away (compare section 5 of “ an act to amend 1 an act relating to the organization of courts of justice and their powers and duties,’ passed February 19, 1852,” 3 Curw. 1705, with section 1 of an act to amend said section 5 of the act first cited, Swan [Derby’s ed.], 263), the court of common picas of Gallia county, affirmed a judgment of the probate court on an information against the plaintiff in error, for assault and battery, brought into the court of common 294] *pleas by a writ of certiorari. To reverse this judgment of affirmance, the plaintiffs in error sued out of the district court a writ of error to the court of common pleas, and the questions thus arising were reserved for decision here.
Only one of the assignments of error will be noticed, our opinion upon that being conclusive.
The original case was not brought into the probate court by filing a recognizance and transcript, as provided in section 30 of “an act defining the jurisdiction and regulating the practice of probate courts.” Swan (Derby’s ed.), 751. It was commenced by the filing of an information by the prosecuting attorney, on which issued a warrant signed by the probate judge, under the command whereof the plaintiffs in error were, for the first time, taken into *295 custody, to answer the charge preferred against them. Did the probate court acquire jurisdiction by those means?
By section'29 of the probate act, it is provided, that “the several probate courts in this state shall not have jurisdiction of any crime, offense, or misdemeanor, the punishment whereof is capital, or by imprisonment in the penitentiary,” nor of certain specified offenses, “but they shall have exclusive cognizance of all other crimes, offenses, or misdemeanors, unless otherwise provided by law.” Among those other offenses, is that charged by this information.
The next section requires all transcripts and recognizances, within the jurisdiction of the probate court, to be returned forthwith by the officer authorized to examine and commit or recognize.
Section 34 reads: “ In no prosecution for crimes, offenses, and nDsdemeanors, cognizance -of which is by this act conferred upon probate courts, shall an indictment by a grand j ury be required; but in all criminal cases brought before the probate court by filing a recognizance and transcript, as hereinbefore provided, the probate judge shall immediately give notice to the prosecuting attorney of his *county, of the pendency of such cause; and such pros- [295 ecuting attorney shall immediately file with said probate court an information sotting forth briefly, but distinctly, in plain and ordinary language, the charge against the accused person, on which charge such person shall be tried.”
By section 60 the probate judge is empowered “to issue all warrants, attachments, and other process, and all notices, commissions, rules, and orders, not contrary to law, that may be necessary and proper to carry into effect the powers granted to him.”
These are the only general provisions of law on the subject of prosecutions by information, which relate to any question of jurisdiction. It is plain that they contemplate no power in the prosecuting attorney to put a party to trial for crime, at his mere discretion, by the filing of an information, which may have no foundation in testimony, but may proceed, from his own mere' conjecture or suspicion. Nor do they provide for any showing to him, by testimony, on which lie is to proceed ; or any to the coui’t, as a foundation for its order that an information be filed. The definition of the jurisdiction of the probate court is broad enough to take in the original cognizance of a charge, by proper process, resulting in an order to file an information, in a case wherein no examination by a justice of the peace, or other officer, has previously been made; *296 but tbe limitations within which the exercise of that jurisdiction is confined by the probate act, do not include any power to act in a criminal case, except upon the transcript of a justice, or other examining officer. The pi’ovision for “ warrants,” contained in the sixtieth section, like that for attachments in the preceding section, is, apparently, made to vest the court with ample powers to issue all process which may possibly become necessary; but it cannot enlarge the limitations referred to.
The general rule, then, established by the probate act, seems to be, that prosecutions shall originate in proceedings befoi’e some officer, who can hear testimony, and decide upon its sufficiency to 296] put the accused on his defense before *the probate court. It is a wholesome rule. If it can be- departed from in any case, the exception should be well guarded. Such an exception is made, or attempted, in “an act to prevent the adulteration of alcoholic liquors,” passed May 1, 1854, Swan (Derby’s ed.), 479a. The seventh section of that act jiro vides as follows: “ Prosecutions for violations of the first section of this act, shall be commenced by information, filed in the probate court of the proper county, by the prosecuting attorney thereof; which information may be filed without a previous examination before a magistrate, and the proceeding, after the filing of the information, shall be the same as in other criminal cases in the probate court.” Without pausing to inquire whether this exception is guarded as it should be, or can have any legal effect whatever, it may be remarked, that here is a plain legislative construction of the general probate act, in harmony with that which this court has adopted. No such words as those contained in the clause of the last-cited section — “which information may be filed without a previous examination before a magistrate” — would have been chosen, had not the legislature recognized the general rule, as we have supposed it. Such a clause would have been superfluous, had any other construction prevailed.
A loose provision of an act, akin to that last mentioned, has been supposed to establish another exception to the rule. Section 11 of “ an act to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio ” (Swan, Derby’s ed. 8986), enacts “ that all prosecutions under this act shall be in the name of the State of Ohio, and shall bo commenced upon a written complaint under oath or affirmation before any justice of the peace of *297, 298 the county in which said offense was committed, or mayor of any incorporated town, village, or city, or by information or indictment, as may be provided by law for the prosecution of offenses, the punishment of which is not capital, or imprisonment in the penitentiary.” Passed on the day when the act to prevent the adulteration of liquors became a law, and relating *to the same general sub- [297 ject, it might be thought that this act was designed to make a second exception to the rule requiring informations to be supported by the action of an examining magistrate; but a careful examination will show that no such construction is necessary, and the very consideration that it would establish a needless exception to a wholesome rule forbids it, if the words will allow the opposite meaning to be supposed. It refers to the rule which may be applied to the prosecution of “ offenses ” (not some offenses, or one offense, but offenses in general) “ the punishment of which is not capital, or imprisonment in the penitentiary.” The words, “ as may be provided by law,” etc., seem to be used out of caution, and point to the future rather than to the present, as plainly appears from the whole act. If the construction is doubtful, we resolve the doubt in favor of the rule, not the exception.
But if we should otherwise construe the section last referred to, it would still be obvious that the only departures from the general policy on this subject, are in two acts of a kindred nature, defining offenses, none of which belonged to the grade of felonies at common law. And it is important to observe that the offense charged in this information is, by the probate law, brought within the same rule of prosecution, as some offenses which were felonies at common law; and that there is just as much power to try the latter on the mere information of the prosecuting attorney, as to prosecute for assault and battery without a previous examination of the charge by a magistrate. Now, it can hardly be contended, that our law has intended to subject a citizen to a trial for larceny, or the like, on the mere accusation of an officer, who can not, if he would, take testimony on which to support the charge, till ho brings the ease to trial. No such power was conceded to any officer of the English law. Informations lie (in England) for misdemeanors only ; they would not support a conviction for treasen or felony. 1 Chit. Or. L. 844. And even in the cases to which informations are appropriate, the attorney-general alone, or, in case his office *be vacant, [298 the solicitor-general can file an information, ex officio, and of his *299 own mere motion. The following observations, taken from Chitty’s Crim. Law, 843, may be read with profit, while we are considering the policy of the law on this subject: “ Informations for offenses more immediately affecting the king, his ministers, or the state, wore filed, ei¡c officio, by the attorney-general, while those in which a private individual was the virtual prosecutor, were placed on record by the king’s coroner, or master of the crown office. But these proceedings, though legal in themselves, became the engines of tyranny in the hands of arbitrary princes. The court of star chamber, in which the members were sole judges of the law, the fact, and the penalty, was used in the reign of Henry VII., by Bmpson and Dudley, his corrupt and favorite ministers, as the engine of oppression to the subject, and of unjust emolument to the crown. During the prosperity of this oppressive tribunal, the common-law authorities of the king’s bench fell into disuse, as being too feeble to satisfy the rapacity of ministers, or the avarice of the soverign. But when, by 15 Car. 1, chap. 10, the star chamber was finally abolished, the ancient power of the attorney-general and master of the crown office in filing informations, began to revive. At this time, both these officers had the power of thus accusing the subject at their discretion, which the attorney-general at present enjoys. Immediately after the revolution, therefore, a further reformation took place, and by the statute of 4 and 5 Wm, & Mary, chap. 18, the coroner was reduced to a mere ministerial officer, and the information exhibited by him in the crown office, subjected entirely to the control of the king’s bench, in that way which we shall presently examine. The attorney-general is not at all affected by this provision, and his authority remains in the same condition as before the statute was enacted.”
By the statute 4 and 5 William and Mary, no proceeding by information can be allowed without leave of the court. The first step is to file affidavits, satisfying the court of the probable guilt of 299] the accused, the innocence of the accuser, *his character and motives, and the like — all of which the court will take into consideration “before they lend their sanction to this extraordinary mode of prosecution.” Next follows a rule calling upon the defendant to show cause why leave should not be granted to file an information against him; which rule being served, the accused may meet the charge by counter affidavits. The court, having examined the affidavits and heard the arguments, openly pronounces a decision, dis *300 charging the rule or making it absolute. If the rule be made absolute, the party who has thus far succeeded must enter a recognizance to prosecute. Ib. 862, 863.
All this caution but illustrates the observation of Sir Matthew Hale, “ That in all criminal causes the most regular and safe way, and most consonant to Magna Charta, cap. 29, 5 E. 3, cap. 9 ; 25 E. 3, cap. 4; 28 E. 3, cap. 3 ; and 42 E. 3, cap. 3, is by presentment or indictment of twelve sworn men.” And so sensible is the' English public of the impropriety of subjecting any one to accusation at the mere will of another, howsoever high the place or trust he holds, that even the attorney-general, though he may file an information against any one whom he thinks proper to select, without oath, without motion, or opportunity for the defendant to show cause against the proceeding, generally pursues this course on grounds laid before him by affidavits of witnesses. And he seldom informs except in such cases as are of notorious occurrence.
In many of the states of this Union, constitutional provisions limited or discountenanced informations; in one, no information would lie where an indictment could be found.
Taking these things into review, how are we to understand the provision of our present constitution which is thus expressed: “Except in cases of impeachment, and cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and in cases of petit larceny and other inferior offenses, no person shall be held to answer for a capital or otherwise infamous crime, unless *on presentment or indictment [300 of a grand jury.” Is it here contemplated, that all the caution of our law in protecting the citizen from needless, unfounded, or malicious accusation, and that shame which is almost inseparable from the idea of a public trial on a charge of crime, is to be wholly abandoned ? I can not so regard it. It is familiar that the grand jury has often been objected to as,inquisitorial, and its secret proceedings denounced as analogous to those of the star chamber; but this objection does not indicate any popular disposition in this country to vest in any officer, in any one man, the power so odious in England. I can not suppose the convention who framed, or the people who adopted, the constitutional provision cited, to have intended any such startling change as to take away all the safeguards of the citizen against groundless accusation or vexatious and oppressive trials for imputed crime. I do not believe that a prosecuting at *301 torney, elected as he is to be the advocate of one side in such accusation or trial, was ever supposed to be a fit person to determine; in his own mere discretion, who shall be prosecuted, and ex officio, to file informations on which convictions for larceny, or the like, may be based. That no such dangerous investment of power in a prosecuting officer was ever contemplated by those who adopted the constitution, seems to be very certain. Nor do I think it was purposed to allow the court, charged with the duty of trying the case finally, and pronouncing judgment thereon, to act in the first instance, as courts in England do, in ordering informations to be filed. Something repugnant to our habits, and to our notions of judicial freedom from bias or partiality, runs through the whole of the practice in deciding upon testimony taken to show cause why an information should not be filed. We do not expect to find in the same person an examining magistrate and a court authorized to give final judgment. We do not hope to find a man who can well discharge his duty in both these capacities. Plainly, I think, none of these things were intended. The general rule adopted by the legislature appears to me to be all that was ever contemplated by those in. 301] *any manner concerned in framing or adopting the constitution. Whether I would go further, and say that any departure from that rule is so forbidden by the constitution as to be beyond the legislative power, it is unnecessary hei’e to declare. But I feel very certain that I am on safe ground when I deny that it was ever intended to allow any such departure.
In all that I have said as to the construction of the constitutional provision, I speak but for one member of the court. But in the conclusion that, unless a single exception has been made by a particular statute, the rule established by the probate act requires all cases to brought into the probate court by the transcript of some examining magistrate, I express the opinion of the whole court.
It may be necessary to guard this decision from misconstruction in a single particular. We do not mean to deny to the prosecuting attorney power to vary the terms and nature of the accusation contained in the transcript,.to the same extent as he 'might do in an indictment, without discharging the recognizance of the accused. Nor is the right to amend informations to be in the least circumscribed by this opinion. Such a right must always be limited to an accusation founded on the same facts as those on which the original information rested; and this decision is consistent with that *302 right to the full extent in which, as we understand the law, it might have been enjoyed, had this ruling never been made. All we say is: “A proceeding before some examining magistrate is necessary, in a case like that before us, to confer jurisdiction on the probate court. That jurisdiction being conferred, the information takes the place of an indictment, and within the limits in which an indictment might vary the charge, and still subject the accused to the consequences of a default on his recognizance, the information may vary or depart from the charge set forth in the recognizance or transcript.
This conclusion compels us to reverse the judgment of the court of common pleas and the probate court.